UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND LEE KYLE #448371,

        Petitioner,

                                          CASE NO. 2:08-CV-14781

v.                                   HONORABLE GEORGE CARAM STEEH

KENNETH ROMANOWSKI,

        Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS
CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND
DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.    Introduction**

      Michigan prisoner Raymond Lee Kyle has filed a *pro se* petition for a writ of habeas

corpus pursuant to 28 U.S.C. §2254 challenging his 2003 Berrien County Circuit Court

convictions for first-degree premeditated murder, MICH. COMP. LAWS § 750.316(1)(a), second-

degree murder, MICH. COMP. LAWS § 750.317, manslaughter, MICH. COMP. LAWS § 750.321,

two counts of assault with intent to commit great bodily harm less than murder, MICH. COMP.

LAWS § 750.84, arson of a dwelling house, MICH. COMP. LAWS § 750.72, and possession of a

firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b.  Petitioner was

sentenced to concurrent terms of life imprisonment without parole on the first-degree murder

conviction, 37 ½ years to 58 years 4 months imprisonment on the second-degree murder

conviction, 8 years 4 months to 15 years imprisonment on the manslaughter conviction, 5 years 7

months to 10 years imprisonment on the assault convictions, 11 years 8 months to 20 years

1

imprisonment on the arson conviction, and a consecutive term of two years imprisonment on the

felony firearm conviction.

In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence, the

jury instructions, the composition of the jury, a limitation on cross-examination, the

voluntariness of Petitioner's police statement, prosecutorial misconduct, the ineffectiveness of

trial and appellate counsel, the use of jury questions, the presentation of perjured testimony, and

the denial of an evidentiary hearing. The Court concludes that Petitioner is not entitled to federal

habeas relief on his claims and denies the petition. The Court also denies a certificate of

appealability and denies Petitioner leave to proceed *in forma pauperis* on appeal.

## II.    Facts and Procedural History

Petitioner's convictions arise from the shooting deaths of his mistress, her friend, and her

brother, his assaults upon two of her children, and the burning of her residence in Benton

Township, Michigan in January, 2002. The Michigan Court of Appeals provided a factual

overview of the case, which is presumed correct on habeas review, *see Monroe v. Smith*, 197 F.

Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 F. App'x 730 (6th Cir. 2002), as follows:

> Defendant was married, but was having an extra-marital affair with Sheila Taylor,
> who lived with her brother, Charles Taylor, and her three children:
> twelve-year-old Dontrael Smith, ten-year-old Nicholas Taylor, and eight-year-old
> Shaquill Crayton. Sometime after midnight on January 11, 2002, defendant went
> to Sheila's house and the two had an argument. Sheila called Alice Palmer for
> assistance and asked her to come over to the house. Sometime during the night,
> the children woke up to a loud noise like somebody falling on the floor. Nicholas
> got out of bed and went to see what was happening. Sheila and Palmer were lying
> motionless on the floor, Charles was on the floor in his bedroom screaming, and
> defendant was going through the kitchen drawer looking for a knife. When
> defendant saw Nicholas, defendant punched him and hit him in the head with a
> clothes iron. Defendant then pulled out a knife and stabbed Nicholas in the chest.
> Defendant followed Nicholas to the children's bedroom where he stabbed
> Dontrael in the shoulder. Defendant then went into Charles' room, and the

children heard Charles screaming and repeatedly yelling, "Quit." Defendant then loaded the children into Palmer's car and drove them to a nearby dirt road and forced them at gunpoint to get into the trunk of the car. Defendant drove the children back to their house and left them in the trunk of the car with the engine running, the radio playing, the headlights on, and the windshield wipers on.

Firefighters responded to a call that Sheila's house was on fire and arrived on the scene at 5:12 a.m. Inside the house, firefighters found the dead bodies of Sheila, Charles, and Palmer. Sheila's body was very badly burned, and had a gunshot wound that passed through her arm into her chest, a stab wound in the arm, and significant hemorrhages in her head. Palmer's body had a gunshot wound that passed through her arms and torso and a bruise over her eye. Charles' hands and feet were bound, and his body was burned and had three gunshot wounds, four stab wounds, and multiple bludgeoning wounds to the head. Police also found four knife handles with the blades broken off and three spent shell casings from a .357 caliber Sig Glock handgun. A fire investigation expert testified that the fire had been intentionally set at approximately 4:45 a.m. and had three causes: (1) the introduction of flammable liquid onto Sheila's body, (2) the introduction of flammable liquid onto Charles's body, and (3) the introduction of a towel onto the hot burner of the stove (Tr II, p 470).

After the firefighters extinguished the fire, they searched the perimeter of the house and discovered the children in the trunk of Palmer's car. Dontrael had a blade sticking out of his shoulder and had severe laceration wounds on his arm. Nicholas had laceration wounds on his head and chest. Shaquill had superficial wounds, including a small cut and abrasion on his stomach.

*People v. Kyle*, No. 248199, 2005 WL 544155, *1-2 (Mich. App. March 8, 2005) (unpublished).

Petitioner filed an appeal of right with the Michigan Court of Appeals asserting that: (1) the prosecution presented insufficient evidence to support his convictions, (2) the trial court erred in instructing the jury that Nicholas's prior inconsistent statement could not be used as substantive evidence, (3) the prosecutor used peremptory challenges to exclude two jurors based upon their race, (4) the trial court erred in refusing to allow cross-examination of witnesses after jury questions, (5) the trial court erred in refusing to suppress his police statement, (6) the prosecutor engaged in misconduct, (7) trial counsel was ineffective for failing to object to the trial court's rulings and the prosecutor's conduct, for eliciting testimony from a police officer

3

that Nicholas embellished parts of his statement, and for failing to seek suppression of the gun recovered from his house, and (8) he was denied a fair trial due to the cumulative effect of the errors. The court denied relief on those claims and affirmed his convictions. *Id.* Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same claims, as well as additional claims of ineffective assistance of counsel, which was denied. *People v. Kyle*, 474 Mich. 933, 706 N.W.2d 20 (2005).

Petitioner subsequently filed a motion for relief from judgment in the state trial court asserting that (1) trial counsel was ineffective for failing to object to the admission of gruesome photographs and the admission of psychological exam, for failing to obtain Alice Palmer's criminal records, for failing to have DNA testing done, for failing to present an insanity defense, for failing to impeach Nicholas and Dontael, and for failing to call Mike Reupert and Christine Cox as witnesses, (2) the trial court erred in allowing jury questions, (3) the prosecution presented perjured testimony by Detective Vaught, and (4) appellate counsel was ineffective for failing to raise these issues on direct appeal. The trial court denied the motion pursuant to Michigan Court Rule 6.508(D)(3), finding that Petitioner had not shown cause, *i.e.*, that appellate counsel was ineffective for failing to raise the claims on direct appeal, or prejudice as the claims lacked merit. *See People v. Kyle*, No. 2002 400252-FC (Berrien Co. Cir. Ct. Sept. 1, 2006). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, raising the same claims, as well as a claim that the trial court erred in denying an evidentiary hearing on collateral review. The court denied leave to appeal "for failure to meet the burden of establishing entitled to relief under MCR 6.508(D)." *See People v. Kyle*, No. 279206 (Mich. Ct. App. Jan. 11, 2008) (unpublished). Petitioner filed an application for leave to

4

appeal with the Michigan Supreme Court, which was similarly denied. *See People v. Kyle*, 482 Mich. 971, 755 N.W.2d 175 (2008).

Petitioner thereafter instituted this federal habeas action, essentially raising the same claims presented to the state courts on direct appeal and collateral review of his convictions. Respondent has filed an answer to the petition contending that it should be denied because the claims lack merit and/or are barred by procedural default.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, governs this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S.

5

12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the

holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, _ U.S. _, 129 S. Ct. 1411, 1419 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

7

Lastly, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.     Discussion**

     **A.     Claims Raised on Direct Appeal**

          **1.     Procedural Default of Certain Claims**

As an initial matter, Respondent asserts that Petitioner's claims concerning Nicholas' prior inconsistent statement, the prohibition on further cross-examination of witnesses after jury questions, and prosecutorial misconduct are barred by procedural default because Petitioner failed to object to such matters at trial.

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

8

The Michigan Court of Appeals rendered the last reasoned opinion on these claims.  In dismissing these claims, the court relied upon Petitioner's failure to object at trial.  *See Kyle*, 2005 WL 544155 at *5-6, 7-8, 9-12.  The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors.  *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits.  *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989).  Plain error review does not constitute a waiver of state procedural default rules.  *See Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).  Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative.  *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).  The Michigan Court of Appeals denied relief on these claims based upon a procedural default – the failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.  *See Coleman*, 501 U.S. at 753; *Nields v. Bradshaw*, 482 F.3d 442, 450 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).  To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  A petitioner must present a

substantial reason to excuse the default.  *See Amadeo v. Zant*, 486 U.S. 214, 223 (1988).  Such

reasons include interference by officials, attorney error rising to the level of ineffective

assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably

available.  *See McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

Petitioner alleges ineffective assistance of trial counsel as cause to excuse his procedural

default.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set

forth a two-prong test for determining whether a habeas petitioner has received the ineffective

assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.

This requires a showing that counsel made errors so serious that he or she was not functioning

as counsel as guaranteed by the Sixth Amendment.  466 U.S. at 687.  Second, the petitioner

must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors

must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

Petitioner, however, cannot establish that trial counsel was ineffective so as to establish

cause, nor can he establish that he was prejudiced, because these claims lack merit for the

reasons stated by the Michigan Court of Appeals and as further discussed *infra*.

Petitioner has also not shown that a fundamental miscarriage of justice has occurred.

The miscarriage of justice exception requires a showing that a constitutional violation probably

resulted in the conviction of one who is actually innocent.  *See Schlup v. Delo,* 513 U.S. 298,

326-27 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."

*Bousley v. United States*, 523 U.S. 614, 624 (1998).  "To be credible, [a claim of actual

innocence] requires petitioner to support his allegations of constitutional error with new reliable

evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or

10

critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

### 2. Merits of Defaulted Claims

#### a. Nicholas's Prior Inconsistent Statement Claim

Petitioner asserts that he is entitled to habeas relief because the trial court erred in instructing the jury that Nicholas's prior inconsistent statement could only be used for impeachment and not as substantive evidence. Petitioner claims that it should have been allowed as substantive evidence because the prosecution did not object and it fell within one or more exceptions to the hearsay rule.

The Michigan Court of Appeals denied relief on this claim on plain error review, finding that the trial court properly ruled that Nicholas's prior inconsistent statement to the police was hearsay, was properly admitted for impeachment purposes under the Michigan Rules of Evidence, and that it did not fall within the exceptions to the hearsay rule. *See Kyle*, 2005 WL 544155 at *5-6. This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law.

As an initial matter, the Court notes that alleged trial court errors in the application of state law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). In other words, "[t]rial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims

11

warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69-70); *see also Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Similarly, in order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than the instructions are undesirable, erroneous or universally condemned. Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle*, 502 U.S. at 72; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). State law instructional errors rarely form the basis for federal habeas corpus relief. *Estelle*, 502 U.S. at 71-72.

Petitioner asserts that the trial court erred in ruling on the admissibility of Nicholas's statement and instructing the jury under the Michigan Rules of Evidence. Consequently, he merely alleges a violation of state law which does not entitle him to federal habeas relief. *See, e.g., Wheeler v. Jones*, 59 F. App'x 23, 28 (6th Cir. 2003). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

Moreover, Petitioner has not shown that the trial court's ruling and corresponding jury instruction rendered his trial fundamentally unfair. While the right of the accused to present a defense has long been recognized as "a fundamental element of due process, " *Washington v. Texas,* 388 U.S. 14, 19 (1967), that right is not unlimited and may be subject to reasonable restrictions. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998). As explained by the Supreme Court, "well-established rules of evidence permit trial judges to exclude evidence if its

12

probative value is outweighed by certain other factors such as unfair prejudice, confusion of the

issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326-27

(2006) (citations omitted).  Excluded evidence violates the right to present a defense only if the

exclusion is arbitrary or disproportionate or infringes on a weighty interest of the defendant.

*Scheffer*, 523 U.S. at 308.  In determining whether the exclusion of evidence infringes upon a

defendant's rights, the question is not whether the excluded evidence would have caused the

jury to reach a different result.  Rather, the question is whether the defendant was afforded "a

meaningful opportunity to present a complete defense."  *Crane v. Kentucky*, 476 U.S. 683, 690

(1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also Chambers v.*

*Mississippi*, 410 U.S. 284, 302 (1973).

In this case, the trial court admitted Nicholas's prior inconsistent statement for

impeachment purposes and so instructed the jury.  Defense counsel had ample opportunity to

question Nicholas about his police statement and his version of events.  Petitioner has not

shown that the trial court's ruling deprived him of the ability to present a complete defense.

Habeas relief is not warranted on this claim.

### b.    Cross-Examination Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court violated

his confrontation rights by refusing to allow further cross-examination of witnesses after jury

questions.  The trial court did allow defense counsel to cross-examine witnesses after

questioning by the prosecutor.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the

right to confront the witnesses against him.  "The  main and essential purpose of confrontation

is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315 (1973). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness's story to test the witness's perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit the witness." *Id.* at 314.

The right of cross-examination, however, is not absolute. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. VanArsdall*, 475 U.S. 673, 679 (1986); *see also Norris v. Schotten*, 146 F.3d 314, 329-30 (6th Cir. 1998). Additionally, as noted, a defendant's right to present evidence may be subject to reasonable restrictions, *Scheffer*, 523 U.S. at 308, so long as the defendant is given a meaningful opportunity to present a complete defense. *Crane*, 476 U.S. at 690; *Chambers*, 410 U.S. at 302.

The Michigan Court of Appeals denied relief on this claim on plain error review, finding that Petitioner was given the opportunity to question and cross-examine witnesses and that he had not shown that his defense was hampered by the trial court's ruling. *See Kyle*, 2005 WL 544155 at *7-8.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. The record indicates that Petitioner was given sufficient opportunity

14

to question and cross-examine the witnesses at trial. He has failed to set forth any facts indicating that the trial court's refusal to allow further cross-examination after the jury questions impaired his ability to present a meaningful defense. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a sufficient basis for an evidentiary hearing in habeas proceedings). Petitioner has failed to demonstrate a constitutional violation. Habeas relief is not warranted on this claim.

### c.   Prosecutorial Misconduct Claims

Petitioner also asserts that he is entitled to habeas relief due to prosecutorial misconduct. Specifically, he asserts that the prosecutor misstated the law, elicited irrelevant and prejudicial information, argued facts not in evidence, invited the jury to speculate, and denigrated defense counsel and the defense.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See*

15

*Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases).  First, the court must

determine whether the challenged statements were indeed improper.  *Id*. at 452.  Upon a finding

of impropriety, the court must decide whether the statements were flagrant.  *Id.*  Flagrancy is

determined by an examination of four factors:  1) whether the statements tended to mislead the

jury or prejudice the accused; 2) whether the statements were isolated or among a series of

improper statements; 3) whether the statements were deliberately or accidentally before the

jury; and 4) the total strength of the evidence against the accused.  *Id.*; *see also Slagle v. Bagley*,

457 F.3d 501, 515-16 (6th Cir. 2006); *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000)

(citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)).  "[T]o constitute the

denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it

permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the

defendant.'"  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

Petitioner first asserts that the prosecutor engaged in misconduct by misstating the law.

Specifically, Petitioner objects to the prosecutor's equating reasonable doubt in a criminal

proceeding with the doubt one might have when getting married, buying a house, or having

children and the prosecutor's remark that Nicholas's prior inconsistent statement could only be

used for impeachment.  It is well-settled that a prosecutor may not misstate the law.  *See, e.g.,*

*Caldwell v. Mississippi*, 472 U.S. 320 (1985).

The Michigan Court of Appeals considered this issue on plain error review and rejected

it.  The court ruled that the prosecutor's reasonable doubt comments were proper and that any

potential prejudice was mitigated by the trial court's jury instructions on reasonable doubt. The

court further ruled that the prosecutor's remarks about Nicholas's prior inconsistent statement

16

was proper under state law.  *Kyle*, 2005 WL 544155 at *10.  This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  The prosecutor's comments were appropriate and did not misstate the law.   Moreover, Petitioner has failed to establish that he was prejudiced by such comments, particularly given the significant evidence of his guilt presented at trial.  *See* discussion *infra*.

Petitioner next asserts that the prosecutor engaged in misconduct by eliciting irrelevant and prejudicial information regarding the number of police officers involved in the search for Petitioner and his arrest.  The Michigan Court of Appeals denied relief on this claim finding that the evidence of Petitioner's flight and arrest was relevant and that the prosecutor did not err in questioning the officers about such matters.  This Court agrees.  The evidence of Petitioner's flight and arrest was relevant to explain the course of events, the recovery of the gun evidence, and Petitioner's incriminating statements.  Petitioner has failed to show that the prosecutor erred or that the admission of the disputed testimony rendered his trial fundamentally unfair.

Petitioner also asserts that the prosecutor engaged in misconduct by arguing facts not in evidence by arguing that a man who acts in self-defense would not try to burn the bodies, destroy the scene, and eliminate witnesses.  It is well-settled that a prosecutor may not misstate the evidence or assume the existence of prejudicial facts not in evidence.  *See Donnelly*, 416 U.S. at 646; *Darden v. Wainwright*, 477 U.S. 168, 182 (1986); *Hodge v. Hurley*, 426 F.3d 368, 380-81 (6th Cir. 2005).

The Michigan Court of Appeals denied relief on this claim finding that the prosecutor's argument was proper as it was supported by the evidence and reasonable inferences from that evidence.  *Kyle*, 2005 WL 544155 at *11.  This decision is neither contrary to Supreme Court

precedent nor an unreasonable application of federal law or the facts.  The prosecution's argument was based upon a reasonable inference from the physical evidence, the children's testimony, and Petitioner's own incriminating statements.  It is well-settled that a prosecutor has leeway to argue the evidence and reasonable inferences therefrom.  *See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000).  Moreover, a prosecutor may argue from the facts that a witness is (or is not) worthy of belief.  *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000).  The prosecutor's argument in this case was appropriate.

Petitioner also asserts that the prosecutor engaged in misconduct during opening statements by inviting the jurors to speculate about the guns used in the shooting.  Specifically, he objects to the prosecutor's remarks that "it's a possibility that perhaps two guns were used at this house.  We don't know.  It will be up for you to judge," and the prosecutor's statement that the spent slug taken from Sheila's body may have been consistent with the ammunition that fell out of Petitioner's pocket when he was arrested.

The Michigan Court of Appeals denied relief on this claim finding that the prosecutor's remarks were proper opening statements intended to inform the jury about the prosecution's evidence and that Petitioner had not shown that he was prejudiced by those remarks.  *Kyle*, 2005 WL 544155 at *11.  This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  The prosecutor's comments were based upon the proposed evidence at trial, did not mislead the jury, and were appropriate for opening statements.  Petitioner has not shown that they affected the fairness of his trial.

Lastly, Petitioner asserts that the prosecutor engaged in misconduct by denigrating defense counsel and disparaging the defense case.  In particular, Petitioner challenges the

prosecutor's comment indicating that defense counsel was attempting to make the jury believe that the prosecution had to prove the case beyond all possible doubt. It is inappropriate for a prosecutor to make personal attacks on a defendant or defense counsel. *See United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996). Prosecutors may not "make unfounded and inflammatory attacks on the opposing advocate," *United States v. Young*, 470 U.S. 1, 9 (1985), "or argue that counsel is attempting to mislead the jury." *West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008). Prosecutors may, however, highlight inconsistencies or inadequacies in the defense, *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005), point out the lack of evidence supporting the defense theory, *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005), and argue from the facts that a defense witness, including a testifying defendant, is not worthy of belief. *See Portuondo*, 529 U.S. at 69.

The Michigan Court of Appeals denied relief on this claim on plain error review. The court determined that the prosecutor was not questioning defense counsel's veracity, but was "merely making a proper response to defense counsel's argument that the jury should find defendant not guilty because the police and other government agencies did not do everything possible to prove defendant's guilt." The court further found that Petitioner had not shown that the prosecutor's comment affected the outcome. *Kyle*, 2005 WL 544155 at *11-12. This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Considered in context, the prosecutor's comment was not a personal attack on defense counsel. Rather it was made in response to defense counsel's challenge to the quality of the prosecution's case and was intended to clarify the concept of reasonable doubt for the jury. Moreover, to the extent the comment could be seen as improper, it was isolated in nature, did

19

not mislead the jury, and was inconsequential given the significant evidence of Petitioner's guilt. Petitioner has failed to show that any misconduct was so flagrant as to render his trial fundamentally unfair.

Moreover, any potential prejudice arising from the prosecutor's conduct was alleviated by the trial court's jury instructions that the attorneys' comments were not evidence, that Petitioner was innocent until proven guilty, and that they should only consider the evidence presented at trial in rendering a verdict. Jurors are presumed to follow a trial court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it."). Petitioner has not shown that any prosecutorial misconduct rendered his trial fundamentally unfair. Habeas relief is not warranted on these claims.

### 3. Merits of Non-Defaulted Claims

#### a. Insufficient Evidence Claims

Petitioner asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support each of his convictions. Respondent contends that these claims lack merit and do not warrant relief from this Court.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of

20

the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, "[t]he mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

Under Michigan law, first-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the killing was premeditated and deliberate. *See People v. Kelly*, 231 Mich. App. 627, 642, 588 N.W.2d 480 (1998); Mich. Comp. Laws § 750.316. Premeditation and deliberation may be established by evidence showing: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 194 Mich. App. 158, 170, 486 N.W.2d 312 (1992); *see also People v. Abraham*, 234 Mich. App. 640, 656, 599 N.W.2d 736 (1999). Second-degree murder requires proof of: (1) a death, (2) caused by an act of the defendant, (3) while the defendant had the intent to kill, the intent to cause great bodily harm, or the intent to perform an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm, and (4) without justification or excuse. *See People v. Bailey*, 451 Mich. 657, 669, 549 N.W.2d 325, 331 (1996); Mich. Comp. Laws § 750.317; *see also People v. Aldrich*, 246 Mich. App. 101,

123, 631 N.W.2d 67, 80 (2001).  Manslaughter requires proof of:  (1) a killing in the heat of

passion, (2) where the passion was caused by an adequate provocation, and (3) where there was

no lapse of time during which a reasonable person could control his passions.  *See People v.*

*Pouncey*, 437 Mich. 382, 388, 471 N.W.2d 346, 350 (1991); MICH. COMP. LAWS § 750.321.

The degree of provocation required must cause a reasonable person to lose control and act out

of passion rather than reason.  *See People v. Tierney*, 266 Mich. App. 687, 714-15, 703 N.W.2d

204, 223 (2005).

The elements of assault with intent to commit great bodily harm less than murder are:

"(1) an assault, *i.e*., an attempt or offer with force and violence to do corporal hurt to another

coupled with (2) a specific intent to do great bodily harm less than murder."  *People v. Bailey*,

451 Mich. 657, 549 N.W.2d 325, 331 (1996); MICH. COMP. LAWS § 750.84.  The elements of

arson of a dwelling house are:  (1) a dwelling house was burned; (2) by, or at the urging of, or

with the assistance of the defendant; and (3) the fire was willfully or maliciously set.  *See*

*People v. Lindsey*, 83 Mich. App. 354, 355, 268 N.W.2d 41 (1978); MICH. COMP. LAWS §

750.72; *see also Gardner v. Kapture*, 261 F. Supp. 2d 793, 804 (E.D. Mich. 2003).  The

elements of felony firearm are that the defendant possessed a firearm during the commission of,

or the attempt to commit, a felony.  *See People v. Akins*, 259 Mich. App. 545, 554, 675 N.W.2d

863 (2003) (citing *People v. Avant*, 235 Mich. App. 499, 505, 597 N.W.2d 864 (1999)); MICH.

COMP. LAWS § 750.227b.

Additionally, the prosecution must prove beyond a reasonable doubt that the defendant

committed the charged offense.  *See, e.g., People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d

216, 218 (1967).  In other words, "proof of [the] defendant's connection with the alleged

offense is an indispensable element of [the prosecutor's] duty." *Id.* Direct or circumstantial

evidence and reasonable inferences arising from that evidence may constitute satisfactory proof

of the elements of an offense, *see People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993),

including the identity of the perpetrator, *see Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D.

Mich. 2002); *Kern*, 6 Mich. App. at 409; *see also People v. Johnson*, 146 Mich. App. 429, 434,

381 N.W.2d 740, 742 (1985), and the defendant's intent or state of mind. *See People v. Dumas*,

454 Mich. 390, 398, 563 N.W.2d 31 (1997); *see also People v. Nowack*, 462 Mich. 392,

402-403, 614 N.W.2d 78 (2000).

In this case, the Michigan Court of Appeals determined that the prosecution presented

sufficient evidence to support each of Petitioner's convictions beyond a reasonable doubt. The

court explained:

> 1. Identity
>
> Defendant first argues that there is insufficient evidence to prove that he was the person who committed the crimes. We disagree. The evidence showing that defendant was the perpetrator is overwhelming. Several witnesses testified that defendant was at Sheila's house the morning of the murders. Nicholas and Dontrael actually saw defendant at the house and were attacked by defendant. Nicholas heard Charles screaming as defendant attacked him. Nicholas and Dontrael indicated that Sheila and Palmer were laying motionless on the floor while defendant was in the house. Sheila had been shot by a nine millimeter handgun-the type of handgun that the police found in defendant's motel room when he was arrested. The police also found spent shell casings from a .357 caliber Sig Glock handgun at the crime scene and at defendant's house and found a .357 caliber Sig Glock stained with Charles' blood at defendant's house. The police found a can of disinfectant spray in Palmer's car that was stained with Charles' blood and was marked with defendant's fingerprints. The children were rescued from the trunk of Palmer's car, which had defendant's handprint on it. Before he was arrested, defendant told police that he had "f**ked up last night." When he was arrested, defendant stated several times that he "just couldn't kill those kids." Defendant's brother also told police that defendant had admitted to him that he was guilty and had put the children in the trunk of a car but could not kill them. In a statement to police, defendant admitted that he went to Sheila's

23

house and saw her and Palmer. He then blacked out, but when he came to, he saw the dead bodies of Sheila, Palmer, and Charles, and saw Dontrael with a knife in his shoulder. Charles' body was on fire. He remembered seeing a gun in his own hand. Defendant admitted that nobody else entered the house while he was there and that nobody else could have committed the crimes but himself. Defendant admitted that it was possible that he snapped under pressure. Defendant told police that when he returned home, he told Renell that he had killed "them," but could not kill the kids. There is no evidence supporting a theory that someone other than defendant committed the crimes. The evidence was sufficient to prove that defendant was the perpetrator of the crimes.

2. First-Degree Premeditated Murder

Defendant argues that there is insufficient evidence to support his first-degree murder conviction for the killing of Charles because there is no evidence that he premeditated Charles' killing. In order to convict defendant of first-degree, premeditated murder, the prosecution was required to prove that defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *People v. Kelly*, 231 Mich App 627, 642; 588 NW2d 480 (1998). "The elements of premeditation and deliberation may be inferred from circumstances surrounding the killing." *Id.* Minimal circumstantial evidence is sufficient to prove an actor's state of mind. *People v. Bowers*, 136 Mich App 284, 297; 356 NW2d 618 (1984). [*People v. Ortiz*, 249 Mich App 297, 301; 642 NW2d 417 (2002).]

"Premeditation and deliberation require sufficient time to allow the defendant to take a second look." *People v. Anderson*, 209 Mich App 527, 237; 531 NW2d 780 (1995). "Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Id*.

Here, defendant carried a gun when he went to Sheila's house. Defendant killed Sheila and Palmer and then went to work killing Charles. Defendant shot Charles three times, stabbed him four times, and bound his hands and feet, but Charles did not die until defendant finally bludgeoned him in the head multiple times with a large metal can. Meanwhile, Charles was screaming and repeatedly yelling for defendant to "quit." The manner of Charles' death gave defendant numerous opportunities for a second look at his actions. Furthermore, defendant tried to cover up the crime by burning Charles' body and then tried to elude capture by fleeing the scene and hiding in a motel. Given defendant's actions before, during, and after he killed Charles, a reasonable juror could find that Charles' killing was deliberate and premeditated.

24

3. Second-Degree Murder

Next, defendant argues that there is insufficient evidence to support his second-degree murder conviction for the killing of Palmer because there is no evidence that he intended to kill her. The elements of second-degree murder are: "(1) death, (2) caused by defendant's act, (3) with malice, and (4) without justification." *People v. Mendoza*, 468 Mich 527, 534; 664 NW2d 685 (2003). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v. Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). Here, defendant shot Palmer in the arm, and the bullet passed through her torso and exited her other arm, killing her. Malice can be inferred from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm. *Carines, supra* at 759. "Malice may also be inferred from the use of a deadly weapon." *Id.* Because defendant shot Palmer and two other victims with a deadly weapon, the jurors could infer malice. Thus, there was sufficient evidence to support defendant's second-degree murder conviction.

4. Manslaughter

Next, defendant argues that there is insufficient evidence to support his manslaughter conviction for the killing of Sheila because there is no evidence that defendant possessed the requisite state of mind. "Manslaughter is murder without malice." *People v. Mendoza*, 468 Mich 527, 534; 664 NW2d 685 (2003). Here, defendant went to Sheila's house and took a gun inside. After defendant and Sheila got into an argument, defendant stabbed her in the arm, fatally shot her, and then burned her body. This evidence is sufficient to support defendant's manslaughter conviction.

5. Assault With Intent To Do Great Bodily Harm Less Than Murder

Next, defendant argues that there is insufficient evidence to support his assault with intent to do great bodily harm less than murder convictions with regard to his assaults of Dontrael and Nicholas because the injuries to the children "were not life-threatening and were not severe." "The elements of assault with intent to do great bodily harm less than murder are: (1) an attempt or offer with force or violence to do corporal hurt to another, (2) coupled with an intent to do great bodily harm less than murder." *People v. Pena*, 224 Mich App 650, 659; 569 NW2d 871 (1997), mod in part on other grounds 457 Mich. 885 (1998).FN1 "The term 'intent to do great bodily harm less than the crime of murder' has been defined as an intent to do serious injury of an aggravated nature." *People v. Mitchell*, 149 Mich App 36, 39; 385 NW2d 717 (1986).

FN1. Although defendant argues that, "If the defendant wanted to kill the children, he could have done so," intent to kill is not an element of assault with intent to do great bodily harm less than murder.

Here, defendant punched Nicholas, hit him in the head with a clothes iron, and then slashed his chest with a knife. Defendant then went into the children's bedroom and stabbed Dontrael in the arm and shoulder. A doctor testified that both of the children's injuries were potentially life-threatening. From this evidence, a reasonable juror could infer that defendant intended to cause the children serious injuries of an aggravated nature. Therefore, the evidence was sufficient to support defendant's assault with intent to do great bodily harm less than murder convictions.

6. Arson

Next, defendant argues that there is insufficient evidence to show that he started the fire that led to his arson conviction. The applicable arson statute provides, in pertinent part: "Any person who willfully or maliciously burns any dwelling house, either occupied or unoccupied, or the contents thereof . . . shall be guilty of a felony. . . ." MCL 750.72. Here, the fire investigation expert testified that the fire had been intentionally set at approximately 4:45 a.m., the time that defendant was at the house. Flammable liquid had been introduced to the bodies of Sheila and Charles, and a towel had been placed on a hot stove burner. Defendant himself told police that parts of the house and Charles' body were on fire while he was there and that nobody else had entered the house while he was there. Defendant admitted to police that nobody could have committed the crimes but himself. From this evidence, a reasonable juror could conclude that defendant had set the fires in order to cover up the evidence that he had murdered Sheila, Charles, and Palmer.

7. Felony-Firearm

Finally, defendant argues that there is insufficient evidence to support his felony-firearm conviction because there is no evidence that he possessed a firearm while he committed the felonies. "'The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony.'" *People v. Akins*, 259 Mich App 545, 554; 675 NW2d 863 (2003), quoting *People v. Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). Here, defendant admitted to the police that he took a gun to Sheila's house. All three victims were shot. Forensic evidence linked the guns found in defendant's home and motel room to the crime scene and the killings. Defendant admitted to the police that he was holding a gun in his hand after the victims were killed. From this evidence, a reasonable juror could find that defendant used a firearm when he committed the crimes.

26

*Kyle*, 2005 WL 544155 at *2-5.

This decision is neither contrary to *Jackson* nor an unreasonable application of federal law or the facts.  The testimony of the child victims, the gun evidence, and Petitioner's own statements were sufficient to establish his identity as the perpetrator of the crimes.  The testimony of the children, Petitioner's use of a gun, the burning of Charles Taylor's body, and Petitioner's actions in fleeing established that Petitioner acted with the requisite intent in killing Charles Taylor so as to support his first-degree murder conviction.  Similarly, Petitioner's use of a gun was sufficient to prove that he acted with the necessary intent to support his second-degree murder conviction for the killing of Alice Palmer.  The testimony and evidence that Petitioner went to Sheila Taylor's residence while armed, fought with her, stabbed and shot her, and then burned her body was sufficient to support his manslaughter conviction.  The children's testimony that Petitioner struck them and stabbed or cut them, combined with the medical testimony that such injuries could be life-threatening, was sufficient to support Petitioner's assault convictions.  The fire investigator's testimony regarding the cause of the fire, and Petitioner's own statements that he was at the house during the fire, provided sufficient evidence to support his arson conviction.  Lastly, the gun evidence, the adult victims' gunshot wounds, and Petitioner's admission that he was armed, provided sufficient evidence to support his felony firearm conviction.

Petitioner essentially challenges the inferences the jury drew from the testimony at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts.  *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced

27

with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").  The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable.  The trial testimony and evidence established beyond a reasonable doubt that Petitioner committed the charged offenses and that he possessed the requisite intent to support his convictions.  Habeas relief is not warranted on these claims.

### b.  Jury Composition Claim

Petitioner also asserts that he is entitled to habeas relief because the prosecution improperly used peremptory challenges to exclude two potential jurors from the jury based upon their race.  Respondent contends that this claim lacks merit.

Although a criminal defendant has no right to have a member of a particular race on his jury, he does have the right to be tried by a jury whose members are selected by non-discriminatory criteria.  *See Powers v. Ohio*, 499 U.S. 400, 404 (1991); *Taylor v. Louisiana*, 419 U.S. 522, 527-28 (1975).  The Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from challenging potential jurors solely on account of their race.  *See Batson v. Kentucky,* 476 U.S. 79, 89 (1986); *Lancaster v. Adams*, 324 F.3d 423, 432-33 (6th Cir. 2003).

To establish a prima facie case of purposeful discrimination in the selection of a *petit* jury based upon the prosecutor's exercise of peremptory challenges, a defendant must show that he is a member of a cognizable racial group and that the prosecutor used peremptory challenges to remove members of the defendant's race from the jury.  The defendant must also show that other relevant circumstances raise an inference that the prosecutor used the peremptory

28

challenges to exclude jurors on account of their race.  Relevant circumstances include the
pattern of strikes and the prosecutor's questions and statements.  *Batson*, 476 U.S. at 96-97.

　　　　Once the defendant makes a *prima facie* showing, the burden shifts to the prosecutor to
offer a "race neutral explanation" for challenging the jurors.  *Id.* at 97.  A "race neutral"
explanation is one based upon something other than the juror's race.  The issue is the facial
validity of the prosecutor's explanation.  "Unless a discriminatory intent is inherent in the
prosecutor's explanation, the reason offered will be deemed race neutral."  *Hernandez v. New
York,* 500 U.S. 352, 360 (1991).  The ultimate question of discriminatory intent concerns an
evaluation of the prosecutor's credibility.  Such a decision represents a factual finding accorded
great deference on appeal, which will not be overturned unless clearly erroneous.  *See Miller-El
v. Cockrell*, 537 U.S. 322, 339-40 (2003). The defendant bears the final burden of proving
purposeful discrimination.  *See Batson*, 476 U.S. at 98.

　　　　Citing *Batson*, the Michigan Court of Appeals denied relief on this claim.  The court
explained in relevant part:

> Here, the prosecutor used peremptory challenges to dismiss three
> African-American jurors (Juror 46, Juror 48, and Juror 59). Defendant argues
> that the prosecutor failed to provide race-neutral explanations for challenging
> two of these jurors (Juror 46 and Juror 59). Assuming that defendant established
> a prima facie case of racial discrimination, we conclude that the trial court did
> not abuse its discretion in finding that the prosecutor provided valid race-neutral
> explanations for challenging those jurors. First, that the prosecutor declined to
> exercise all of his peremptory challenges to remove all of the African-Americans
> from the jury is strong evidence against a showing of discrimination. *Eccles,
> supra* at 387-388.
>
> The prosecutor explained that he dismissed Juror 46 because she had not
> reported on her juror questionnaire that she had convictions for disorderly
> conduct, having an illegal occupation, and three counts of truancy. The
> prosecutor indicated that he did not want jurors who were not honest about their
> prior criminal records. This was a valid race-neutral reason for dismissing Juror

46.

> Juror 59 indicated that her mother had been paralyzed when she was stabbed in the back by her ex-boyfriend. Juror 59's brother was convicted of assault with intent to do great bodily harm, her cousin was charged with first-degree murder, her other cousin had a drug conviction. Juror 59 indicated that she could "just keep going" about her relatives that had been charged with crimes. The prosecutor stated that he dismissed Juror 59 because her family members had been charged with serious crimes and her mother had been the victim of a crime. The prosecutor indicated that he did not want jurors who had family members who had been charged with serious crimes. Thus, the prosecutor articulated a race-neutral reason for dismissing Juror 59. Therefore, the trial court did not abuse its discretion in allowing the prosecutor to use peremptory challenges to dismiss Jurors 46 and 59.

*Kyle*, 2005 WL 544155 at *6-7.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The record does not reveal evidence of purposeful discrimination by the prosecutor in exercising the contested peremptory challenges. The mere fact that the prosecutor used peremptory challenges to excuse three African-American venire persons from the jury, standing alone, is insufficient to establish a prima facie case of discrimination. *See United States v. Sangineto-Miranda*, 859 F.2d 1501, 1521 (6th Cir. 1988); *see also Williams v. Woodford*, 306 F.3d 665, 681 (9th Cir. 2002); *Anderson v. Cowan*, 227 F.3d 893, 901-02 (7th Cir. 2000) (fact that prosecution used peremptory challenges to exclude two African-American women from jury, without more, was insufficient to raise inference of discrimination). A court considering a *Batson* challenge must look to all the relevant circumstances, including the number of strikes against jurors of a particular racial group and the prosecution's questions and comments during voir dire. *See Batson*, 476 U.S. at 97. A court may also consider factors such as the racial composition of the jury venire and the final jury panel, the number of peremptory challenges and their manner of execution, and the race of all

30

jurors who are excused from service (whether for cause or peremptorily).  *See Sangineto-Miranda*, 859 F.2d. at 1520.

In this case, Petitioner points to no facts, other than the striking of three African-Americans, to support his *Batson* claim.  The Court's review of the record demonstrates that the relevant circumstances negate an inference of discrimination.  The prosecution did not question any of the jurors in an unusual, distinct, or discriminatory manner nor did the prosecution make any comments reflecting bias or discriminatory intent.  The prosecution used peremptory challenges to excuse white jurors, as well as the jurors at issue, and did not use peremptory challenges to remove all of the African-American jurors.  Several jurors were also excused for cause.  Furthermore, the voir dire transcript indicates that the prosecution had sufficient, non-discriminatory reasons to excuse the jurors in question – the dishonesty of Juror 46, the criminal background of Juror 48, and the family history of Juror 59.  Given such circumstances, Petitioner has not shown that the prosecution unconstitutionally exercised peremptory challenges to excuse African-Americans from the jury.  Habeas relief is not warranted.

### c.        Miranda and Involuntary Statement Claims

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in denying his motion to suppress his police statement.  Petitioner asserts that his statement should have been suppressed because he was not given his *Miranda* rights and because his statement was involuntary.  Respondent contends that these claims lack merit.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that statements made during a custodial interrogation of a suspect are inadmissible at trial unless the defendant has voluntarily and knowingly waived certain rights prior to making those statements.

31

A defendant's waiver of his *Miranda* rights must be found, based upon the totality of the circumstances, to be voluntary, knowing, and intelligent. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986). Whether a defendant understood his *Miranda* rights is a question of fact underlying the question of whether his waiver of those rights was knowing and intelligent. Thus, on federal habeas review, a federal court must presume that the state court's factual finding that a defendant fully understood what was being said and waived his rights is correct unless the petitioner shows otherwise by clear and convincing evidence. *See Valdez v. Ward*, 219 F.3d 1222, 1231 (10th Cir. 2000); *see also Henderson v. DeTella*, 97 F.3d 942, 946 (7th Cir. 1996).

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *See Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). A confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question." *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988). In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Those circumstances include:

1. Police Coercion (a "crucial element")
2. Length of Interrogation
3. Location of Interrogation
4. Continuity of Interrogation
5. Suspect's Maturity
6. Suspect's Education
7. Suspect's Physical Condition & Mental Health
8. Whether Suspect Was Advised of Miranda Rights

32

*Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).  All of the factors involved in the giving of

the statement should be closely scrutinized.  *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961).

Without coercive police activity, however, a confession should not be deemed involuntary.

*Connelly,* 479 U.S. at 167 ("coercive police activity is a necessary predicate to the finding that a

confession is not 'voluntary' within the meaning of the Due Process Clause").  Coercion may be

psychological, as well as physical.  *See Arizona v. Fulminante*, 499 U.S. 279, 285-89 (1991);

*Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994).  The burden of proving that a

confession was involuntary rests with the petitioner.  *Boles v. Foltz*, 816 F.2d 1132, 1136 (6th

Cir. 1987).

The Michigan Court of Appeals denied relief on these claims.  The court upheld the trial

court's factual finding that Petitioner was given his *Miranda* rights based upon the testimony of

two police officers at the evidentiary hearing.  The court further determined that Petitioner's

confession was voluntary, explaining in relevant part:

> When defendant made his confession to police, he was visibly upset. He
> indicated to police that he had contemplated suicide. However, despite
> defendant's emotional state when he made the confession, the following factors
> favored the trial court's determination that defendant's waiver of his Fifth
> Amendment rights and his subsequent confession were voluntary: (1) The
> questioning officer testified that defendant was not so upset that he was
> incapacitated or unable to communicate or understand what was going on; (2)
> when defendant cried during the interview, the police stopped questioning him
> and waited for him to compose himself; (3) defendant was cooperative with
> police when he made the statement; (4) there is no evidence that the police
> threatened defendant with abuse; (5) defendant was old enough to be married
> and have two children; (6) defendant was not under the influence of drugs or
> alcohol; (7) there is no evidence that defendant was tired, hungry, or thirsty
> when he made the statement; (8) defendant's confession was made approximately
> one hour after his arrest; (9) defendant was given Miranda warnings and signed a
> card listing these warnings before he made his confession; (10) there is no
> evidence that defendant asked to talk to an attorney before he made the

33

statement; and (11) the questioning only lasted about thirty minutes. Applying the *Cipriano* factors, we conclude that the trial court did not abuse its discretion in concluding that defendant's confession was voluntary and admissible at trial.

*Kyle*, 2005 WL 544155 at *8-9.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The state court found the police officers' testimony that Petitioner was advised of his *Miranda* rights credible and concluded that Petitioner knowingly and voluntarily waived his rights and spoke to the police. The state court's credibility determination is presumed correct. *See Miller*, 474 U.S. at 112. Petitioner has offered no evidence to overcome this presumption. He has thus failed to establish a *Miranda* violation.

Moreover, Petitioner has not alleged any facts indicative of police coercion nor otherwise demonstrated that his statement was involuntary. He was 34-years-old at the time of his arrest and was married with children. He was advised of his *Miranda* rights and waived those rights before speaking to the police. He was in custody for approximately one hour before making his statement and the interrogation only lasted for about 30 minutes. Although Petitioner was upset, there is no indication that he was high, intoxicated, or mentally impaired, or that he was deprived of food, water, sleep, or any other necessity while in custody. Petitioner has failed to demonstrate that his confession was involuntary. Habeas relief is not warranted.

### d.   Ineffective Assistance of Trial Counsel Claims

Petitioner asserts that trial counsel was ineffective for failing to object to the trial court's rulings and the prosecutor's conduct, for eliciting testimony from a police officer that Nicholas embellished parts of his statement, and for failing to seek suppression of the gun recovered from his house. Respondent contends that these claims lack merit.

34

As noted, the Supreme Court has established a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has recently confirmed that a federal court's consideration of

35

ineffective assistance of counsel claims arising from state criminal proceedings is quite limited

on habeas review due to the deference accorded trial attorneys and state appellate courts

reviewing their performance.  "The standards created by *Strickland* and § 2254(d) are both

'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Harrington*,

131 S. Ct. at 788 (internal and end citations omitted).

Petitioner first asserts that trial counsel was ineffective for failing to object to the

claimed trial court errors and instances of prosecutorial misconduct.  The Michigan Court of

Appeals denied relief on this claim finding that such objections would have been futile because

the underlying claims lack merit.  *Kyle*, 2005 WL 544145 at *13.  This Court agrees and finds

that this decision is neither contrary to *Strickland* nor an unreasonable application thereof.

Petitioner cannot establish that counsel erred or that he was prejudiced by counsel's conduct in

this regard because the underlying claims lack merit.  *See* discussion *supra*.  Counsel cannot be

deemed ineffective for failing to make a futile motion or objection.  *See McQueen v. Scroggy*,

99 F.3d 1302, 1316 (6th Cir. 1996).

Petitioner next asserts that trial counsel was ineffective for eliciting testimony from a

police officer that he believed Nicholas embellished parts of his police statement.  The

Michigan Court of Appeals denied relief on this claim, finding that defense counsel asked the

officer about Nicholas embellishing his story to undermine Nicholas' credibility as a witness

and that such a decision was a matter of trial strategy.  *See Kyle*, 2005 WL 544155 at *13.

This decision is neither contrary to *Strickland* nor an unreasonable application thereof.

Given that the trial court admitted Nicholas's statement for impeachment purposes, counsel may

have reasonably decided to elicit the officer's opinion that Nicholas was embellishing his story

36

in order to discredit Nicholas as a witness.  The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective.  *See, e.g., Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").  Petitioner has not shown that trial counsel was ineffective in this regard.

Lastly, Petitioner asserts that trial counsel was ineffective for failing to seek suppression of the gun recovered from his house.  The Michigan Court of Appeals denied relief on this claim, finding that any objection by counsel would have been futile because Petitioner's wife invited the officers into the house and said that they could look around without limiting the search.  *See Kyle*, 2005 WL 544155 at *13.

This decision is neither contrary to *Strickland* nor an unreasonable application thereof. Because Petitioner's wife consented to the search and there is no evidence in the record that she placed any restrictions on her consent, the search was valid and the gun was admissible. Consequently, Petitioner cannot establish that counsel erred or that he was prejudiced by counsel's failure to seek suppression of the gun.  Counsel cannot be deemed ineffective for failing to make a futile motion or objection.  *McQueen*, 99 F.3d at 1316.  Petitioner has not established that he was denied the effective assistance of trial counsel.  Habeas relief is not warranted on these claims.

### B.   Claims Raised on Collateral Review

#### 1.   Procedural Default of Certain Claims

Respondent contends that Petitioner's claims concerning additional allegations of ineffective assistance of trial counsel, the use of jury questions, and alleged perjury by a police

detective are barred by procedural default because Petitioner presented them to the state courts on collateral review and those courts relied upon a procedural bar to deny him relief.

As previously discussed, federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright*, 433 U.S. at 85-87. Procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White*, 431 F.3d at 524; *Howard*, 405 F.3d at 477; *Coleman,* 244 F.3d at 539. Procedural default bars consideration of a federal claim on habeas review if the last state court rendering a judgment "'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris*, 489 U.S. at 263-64. The last *explained* state court judgment is used to make this determination. *Ylst*, 501 U.S. at 803-05. If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id*.

Petitioner presented these claims to the state courts in his motion for relief from judgment. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* Mich. Ct. R. 6.508(D)(3). The United States Court of Appeals for the Sixth Circuit has recently held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a

38

rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

In this case, the state trial court denied relief on procedural grounds. The trial court cited Michigan Court Rule 6.508(D)(3)(a) and concluded that Petitioner had not shown cause, *i.e.*, that appellate counsel was ineffective, or prejudice because his underlying claims lacked merit, nor had he demonstrated his actual innocence. Accordingly, these claims are procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 753; *Nields*, 482 F.3d at 450; *Gravley*, 87 F.3d at 784-85.

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse the procedural default of these claims. Petitioner has not shown that appellate counsel was ineffective. In order to establish ineffective assistance of appellate counsel, Petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690.  Therefore, judicial scrutiny of counsel's performance must be "highly deferential." *Id*. at 689.  The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy .... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).  Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his motion for

40

relief from judgment appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented legitimate and viable issues, including challenges to the sufficiency of the evidence, the use of Nicholas's prior inconsistent statement, the jury composition, a limitation on cross-examination of witnesses, the voluntariness of his police statement, the prosecutor's conduct, the effectiveness of trial counsel, and cumulative error. Petitioner has not shown that appellate counsel's strategy in presenting those claims and not raising the claims contained in the motion for relief from judgment was deficient or unreasonable. Petitioner has thus failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default.

A federal court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Nonetheless, the Court notes that Petitioner's defaulted claims lack merit for the reasons stated by the state trial court in denying his motion for relief from judgment. Lastly, as discussed *supra*, Petitioner has not established that a fundamental miscarriage of justice has occurred. These claims are thus barred by procedural default, lack merit, and do not warrant federal habeas relief.

**2.      Ineffective Assistance of Appellate Counsel Claim**

Petitioner relatedly asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the foregoing issues on direct appeal in the state courts. Petitioner, however, is not entitled to habeas relief on any independent claim challenging appellate counsel's conduct. As explained *supra*, he has failed to establish that appellate counsel was ineffective under the *Strickland* standard – and the defaulted claims lack merit.

41

Habeas relief is not warranted on this claim.

### 3.    Evidentiary Hearing Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the state courts denied him an evidentiary hearing on collateral review and/or he is entitled to an evidentiary hearing in federal court.  To the extent that Petitioner claims that the state courts violated state law in denying him an evidentiary hearing, he is not entitled to relief.  A state court's alleged failure to properly apply state law or its own procedural rules, even if well-established, is not cognizable on federal habeas review.  As noted, the Court's power to grant a writ of habeas corpus only extends to errors in the application of federal law.  *See Estelle*, 502 U.S. at 67-68. Habeas relief is unavailable for state law errors and a federal court will not review a state court's decision on a matter of state law.  *See Lewis*, 497 U.S. at 780; *see also Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860.  Moreover, given the Court's determination that the foregoing claims lack merit, Petitioner has not shown the need for an evidentiary hearing.

## V.    Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition.  Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability ("COA") must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a federal district court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the

court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529

U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists

could conclude the issues presented are adequate to deserve encouragement to proceed further."

*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A court may not conduct a full merits review,

but must limit its examination to a threshold inquiry into the underlying merit of the habeas

claims.  *Id.* at 336-37.

When a federal district court denies relief on procedural grounds without addressing the

merits of a claim, a certificate of appealability should issue if it is shown that jurists of reason

would find it debatable whether the petitioner states a valid claim of the denial of a

constitutional right, and that jurists of reason would find it debatable whether the court was

correct in its procedural ruling.  *See Slack*, 529 U.S. at 484-85.

The Court concludes that Petitioner has failed to make a substantial showing of the

denial of a constitutional right as to his habeas claims and that reasonable jurists could not

debate the Court's procedural rulings.  Accordingly, the Court **DENIES** a certificate of

appealability.  The Court further concludes that any appeal from this order would be frivolous

and cannot be taken in good faith.  *See* Fed. R. App. P. 24(a).  Accordingly, the Court **DENIES**

Petitioner leave to proceed *in forma pauperis* on appeal.

**IT IS ORDERED.**

Dated:  March 17, 2011

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

43

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 17, 2011, by electronic and/or ordinary mail and also to
Raymond Kyle at Carson City Correctional Facility, 10522 Boyer
Road, Carson City, MI 48811.


S/Josephine Chaffee
Deputy Clerk